UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD O. KINCAIDE,

          Plaintiff,        Civil Action No. 16-11903
                                   Honorable Denise Page Hood
                                   Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 16]**

Plaintiff Richard Kincaide ("Kincaide") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [13, 16], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Kincaide is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Kincaide's Motion for Summary Judgment [13] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On August 16, 2013, Kincaide filed an application for DIB, alleging a disability onset date of July 26, 2010.[1] (Tr. 123-26). This application was denied initially on November 27, 2013. (Tr. 65-68). Kincaide then filed a timely request for an administrative hearing, which was held on January 12, 2015, before ALJ Henry Perez, Jr. (Tr. 30-51). Kincaide, who was represented by attorney J.B. Bieske, testified at the hearing, as did vocational expert Larissa Boase. (*Id.*). On February 9, 2015, the ALJ issued a written decision finding that Kincaide was not disabled under the Act on or before September 30, 2010 (his date last insured). (Tr. 18-25). On March 25, 2016, the Appeals Council denied review. (Tr. 2-4). Kincaide timely filed for judicial review of the final decision on May 26, 2016. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without

---

[1] Kincaide's date last insured is September 30, 2010. (Tr. 65). Thus, he must establish disability on or before that date in order to be entitled to DIB.

2

further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

*1.      Kincaide's Reports and Testimony*

At the time of the hearing, Kincaide was 59 years old, and at 5'10" tall, weighed 245 pounds.  (Tr. 33, 137).  He lived in a house with his wife.  (Tr. 156).  He completed high school and three years of college.  (Tr. 33, 138).  Previously, he worked as a loan officer, sports announcer, and radio host, but, after making some changes in his work activities in July 2010, allegedly stopped working entirely because of his medical condition in April 2012.  (Tr. 137-39).

Kincaide alleges disability primarily as a result of atrial fibrillation, a torn left tibular tendon, and asthma.  (Tr. 137).  He testified that his atrial fibrillation – an irregular heartbeat that causes part of his heart to beat too fast – results in extreme fatigue.  (Tr. 34).  He has tried medication, and undergone four ablations and multiple cardioversions, in an attempt to correct

3

the problem, but he testified that it still occurs from time to time. (Tr. 35). As a result, he suffers from fatigue on a daily basis and takes three or four naps per day. (Tr. 35-36). Kincaide further testified that he tore his left posterior tibial tendon in July 2010, and it still causes chronic pain – like "constantly having a sprained ankle" – and "serious mobility issues." (Tr. 37). He opted not to undergo surgery to repair this tendon, because it involved "about a two-year recovery time" and had only a 50/50 chance of correcting his ongoing issues. (*Id.*). He wears an ankle brace and uses a cane any time he has to walk for more than ten minutes. (Tr. 162).

Kincaide testified that he can walk 50-75 feet at one time; stand for 10 minutes; sit for 15-20 minutes; and lift 10-15 pounds. (Tr. 39-40). He is able to attend to his own personal care needs, care for his pets, prepare simple meals, vacuum, drive, and shop in stores. (Tr. 157-59). At the time of the administrative hearing, he was taking fifteen or sixteen medications, which he testified cause fatigue and difficulty concentrating. (Tr. 38, 45).

### 2. Medical Evidence

The Court has thoroughly reviewed Kincaide's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. Vocational Expert's Testimony

Larissa Boase testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 45-50). The ALJ asked the VE to imagine a claimant of Kincaide's age, education, and work experience who could perform light work, with the following additional limitations: can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can sit for up to six hours and stand and/or walk for up to four hours in an eight-hour workday; can push and pull within the aforementioned weight restrictions; can occasionally use the left foot for tasks; can

occasionally climb stairs, ramps, ladders, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can occasionally work around unprotected heights and moving machinery, and operate a motor vehicle; and must avoid concentrated exposure to extreme cold and dust, fumes, and pulmonary irritants. (Tr. 47-48). The VE testified that the hypothetical individual would be capable of performing Kincaide's past relevant work as a sports announcer and loan officer. (Tr. 48-49).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Kincaide is not disabled under the Act. At Step One, the ALJ found that Kincaide did not engage in substantial gainful activity between July 26, 2010 (his alleged onset date) and September 30, 2010 (his date last insured). (Tr. 20). At Step Two, the ALJ found that Kincaide has the severe impairments of atrial fibrillation, asthma, and a left foot/ankle injury. (*Id.*). At Step Three, the ALJ found that Kincaide's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 21).

The ALJ then assessed Kincaide's residual functional capacity ("RFC"), concluding that, through his date last insured, he was capable of performing light work, with the following additional limitations: can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can sit for up to six hours and stand and/or walk for up to four hours in an eight-hour workday; can push and pull within the aforementioned weight restrictions; can occasionally use the left foot for tasks; can occasionally climb stairs, ramps, ladders, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can occasionally work around unprotected heights and moving machinery, and operate a motor vehicle; and must avoid concentrated exposure to extreme cold and dust, fumes, and pulmonary irritants. (Tr. 21).

At Step Four, the ALJ determined that, through his date last insured, Kincaide was capable of performing his past relevant work as a loan officer and sports announcer. (Tr. 24). As a result, the ALJ concluded that Kincaide is not disabled under the Act. (Tr. 25).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13;

*Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.      Analysis**

In his motion for summary judgment, Kincaide – proceeding *pro se* – argues that (1) the ALJ's statement regarding his use of supplemental oxygen in 2015 "constitutes, albeit perhaps an unwitting one, an abuse of the Judge's discretion"; (2) his hearing testimony "was not given proper weight and thus the decision is not in fact supported by substantial evidence"; and (3) the decision by the Appeals Council not to review his case "constitutes an improper denial of [his] Due Process rights." (Doc. #13 at 4). In the context of reviewing the ALJ's decision to ensure it is supported by substantial evidence, the Court will consider each of these arguments.

As set forth above, the ALJ determined that Kincaide has the RFC to perform light work,

7

with additional exertional and nonexertional limitations. (Tr. 21). In reaching this conclusion, the ALJ discussed the relevant medical evidence.[2] For example, the ALJ noted that treatment records from the University of Michigan Hospital and Health System show that Kincaide was hospitalized from January 25, 2010, through January 27, 2010, for atrial fibrillation ("AFib"). (Tr. 22, 191). Kincaide reported a history of AFib dating back to 1997, which he indicated had been treated with medication and multiple cardioversions, but he said he had not had any A-Fib episodes since May 2009.[3] (Tr. 187). On January 26, 2010, Kincaide underwent radiofrequency ablation of the left atrium and was subsequently discharged in good condition, albeit with the caveat that many patients with AFib require a second procedure before long-time sinus rhythm can be restored. (Tr. 187, 197). He was released to return to work February 1, 2010. (Tr. 195).

Kincaide followed up with his cardiologist, Thomas Mladsi, M.D., on March 5, 2010, reporting no recurrence of AFib. (Tr. 255). Kincaide saw Dr. Mladsi again on July 15, 2010, reporting that he had had one episode of AFib in June that lasted about 20 hours but converted to sinus rhythm with medication. (Tr. 254).

The ALJ also noted that treatment records from Oakland Orthopaedic Surgeons indicate that Kincaide was seen on July 26, 2010, for complaints of a left-sided posterior tibial tendon injury. (Tr. 23, 207). Allan Grant, M.D. noted that Kincaide complained of pain with ambulation and reported that he was "unable to wear his hockey skates and play without pain on the left side." (*Id.*). Dr. Grant assessed advanced stage II posterior tibial tendon dysfunction on

---

[2] At issue is whether Kincaide was disabled between his alleged onset date (July 26, 2010) and his date last insured (September 30, 2010). Thus, the Court will focus on medical evidence pertaining to this period of time, bearing in mind, however, that under the Act, a claimant is disabled only if his medically determinable impairment "can be expected to result in death or [] has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

[3] Indeed, Kincaide reported at the time that he was playing hockey two days a week. (Tr. 188).

8

the left with a tight gastrocnemius, and discussed with Kincaide the treatment options – namely, bracing or surgery. (*Id.*). Ultimately, Kincaide decided against surgery, and a brace was prescribed. (Tr. 212).

The ALJ further noted that, on September 21, 2010, Kincaide presented to the emergency room at Royal Oak Hospital, with complaints of rapid heart rate, chest pain, shortness of breath, and diaphoresis. (Tr. 23, 341). He had been seen in the emergency room the previous day with the same complaints, at which point his heart rate spontaneously converted and he was discharged home. (*Id.*). Because he did not spontaneously convert this time, and because of his repeat symptoms, he was admitted to the hospital. (Tr. 347). During his hospitalization, Kincaide was placed on IV medication, after which he converted to normal sinus rhythm. (Tr. 350-51). He was discharged in stable condition on September 24, 2010, and noted to be a good candidate for another ablation in a few weeks. (Tr. 353).

On October 7, 2010, Kincaide followed up with Dr. Mladsi, reporting continued complaints of fatigue and lack of energy that he related to his relatively rapid heart rate. (Tr. 253). Dr. Mladsi recommended continuing with current medication and scheduling a TEE-guided cardioversion for the following week. (*Id.*). That same day, Kincaide also saw David Nori, M.D. for his AFib/flutter. (Tr. 404-05). Dr. Nori noted that Kincaide "had been doing very well" after his January 2010 ablation until September 21, 2010, when he noticed a racing heartbeat. (Tr. 404). Dr. Nori also recommended proceeding with the TEE-guided cardioversion and, after restoration of normal sinus rhythm, replacing Kincaide's current medication with a different antiarrhythmic medication. (Tr. 404-05).

On October 13, 2010, Kincaide underwent a cardioversion at Beaumont Hospital. (Tr. 408). The procedure was successful in restoring sinus rhythm and had no apparent

9

complications. (*Id.*). On November 11, 2010, Kincaide saw Dr. Nori, reporting that he was feeling well and had "returned to full activity." (Tr. 402). Kincaide then saw Dr. Mladsi on December 3, 2010, reporting that he was "feeling quite well without any recurrence of palpitations" and had returned to exercise. (Tr. 252).

On December 14, 2010, however, Kincaide was again hospitalized with AFib after he experienced heart palpitations, mild shortness of breath, and some left jaw pain. (Tr. 23, 225, 251). In describing Kincaide's history, Dr. Mladsi noted that he had just seen Kincaide on December 3, at which time he was feeling quite well without any recurrent arrhythmia, tolerating his medications, and "back to a vigorous exercise routine." (Tr. 228). Dr. Mladsi's assessment included recurrent atrial arrhythmias with previous AFib, atrial flutter, and atrial tachycardia. (Tr. 229). As the ALJ noted, on February 15, 2011, Kincaide underwent a successful atrial fibrillation ablation procedure. (Tr. 23, 375-79). Subsequently, Kincaide did "quite well" for more than one year before he played hockey twice in one day and experienced a transient irregular heartbeat. (Tr. 266). Indeed, Dr. Mladsi's treatment notes from March 23, 2012, indicate that he had not seen Kincaide since December of 2010. (Tr. 266).

In addition to considering this medical evidence (Tr. 22-23), the ALJ also considered the opinion of the state agency medical consultant, R.H. Digby, M.D., M.P.H., who reviewed the medical evidence of record and determined that Kincaide has the RFC to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for four hours, and sit for about six hours in an eight-hour workday. (Tr. 24, 59). Dr. Digby also opined that Kincaide is limited to occasional left foot tasks; occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and should avoid concentrated exposure to extreme cold, as well as fumes, odors, dust, etc. (Tr. 59-60). As the

10

ALJ noted, his finding as to Kincaide's RFC is "generally consistent" with Dr. Digby's evaluation. (Tr. 24).

Additionally, in formulating Kincaide's RFC, the ALJ considered Kincaide's testimony, finding that his allegations of disability were "inconsistent with the objective medical findings in the record," and that his testimony was "not well supported by the objective medical evidence in the record and therefore not entitled to controlling weight." (*Id.*). Kincaide's only real challenge to the RFC determination relates to the ALJ's conclusion in this respect; specifically, he argues that his "testimony in this matter was not given proper weight." (Doc. #13 at 4).[4]

To the extent Kincaide is challenging the ALJ's credibility analysis, courts have recognized that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain is in issue, after the ALJ finds a medical condition that could

---

[4] Relatedly, Kincaide questions the ALJ's mention of the fact that he "was using an oxygen tank at his hearing" (Tr. 22), voicing a suspicion that "the Judge may ha[ve] thought [he] was using the oxygen tank to make [himself] appear to be sicker than [he] really was" when, in fact, he had suffered an exacerbation of his asthma two months before the hearing. (Doc. #13 at 2). But there is no merit to this speculative concern. Contrary to Kincaide's assertions, where the ALJ found his asthma to be a severe impairment, it is relevant whether he used oxygen during the relevant time period. Because Kincaide testified that he had not used oxygen until a few years after his date last insured, it was entirely appropriate for the ALJ to note that fact in his decision. (Tr. 22, 42).

11

reasonably be expected to produce the claimant's alleged symptoms, he must consider other relevant factors to determine if the claimant's claims regarding the level of pain are credible. *See Soc. Sec. Rul. 96-7*, 1996 WL 374186, *1 (July 2, 1996). These factors include (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment other than medication received for relief of pain or other symptoms; and (6) any measures used to relieve pain or other symptoms. *See* 20 C.F.R. §404.1529(c)(3).

In this case, the ALJ properly considered these factors in evaluating the credibility of Kincaide's subjective complaints. For example, the ALJ considered Kincaide's daily activities, noting his testimony regarding his need to take daily naps and his alleged difficulties walking, standing, and lifting. (Tr. 22). Moreover, the fact that Kincaide was able to play hockey and engage in other vigorous exercise during the alleged period of disability (Tr. 188, 207, 228, 252) certainly suggests that his allegations are not entirely credible, as these are not the type of activities one would expect of a disabled individual. The ALJ also discussed the location, duration, and frequency of Kincaide's symptoms, noting that Kincaide went months between his January 2010 ablation and September 2010 AFib recurrence without experiencing any significant cardiac symptoms. (Tr. 22-23). Additionally, the ALJ discussed the type, dosage, effectiveness, and side effects of Kincaide's medications, noting that medication generally helped convert his AFib to normal sinus rhythm. (Tr. 23). And, finally, the ALJ considered treatment (other than medication) used to relieve pain or symptoms, noting that Kincaide wore an ankle brace and that his AFib was reasonably well-controlled between procedures during the relevant period of time. (Tr. 23). Having considered these factors, the ALJ then concluded that Kincaide's allegations of

disability were "inconsistent with the objective evidence of record" and "therefore not entitled to controlling weight." (Tr. 24). Kincaide has not presented a "compelling reason" for disturbing the ALJ's credibility analysis, nor has he otherwise demonstrated that the ALJ's findings are not supported by substantial evidence.[5]

Finally, Kincaide also argues that the Appeals Council's decision not to review his case "constitutes an improper denial of [his] Due Process rights." (Doc. #13 at 4). As an initial matter, despite being granted an extension of time to file a brief with the Appeals Council (Tr. 5-7), Kincaide's attorney apparently failed to do so. Moreover, as the Commissioner correctly points out, this Court cannot consider the propriety of the Appeals Council's order denying review in his case, because such an order is not subject to judicial review. *See Reetz v. Comm'r of Soc. Sec.*, 2013 WL 4482962, at *4 n. 2 (E.D. Mich. Aug. 19, 2013) ("If, as in the instant case, the Appeals Council denies review, that denial renders final the decision of the ALJ. It is the decision of the ALJ, not the procedural decision of the Appeals Council to deny administrative review, which is subject to judicial review.").

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

---

[5] In his motion, Kincaide references the ALJ's conclusion that he was "not entirely credible," and then says, "That's the nub of it. My life experience tells me [the ALJ is] wrong . . ." (Doc. #13 at 4). But this fails to appreciate the legal standards discussed above, *see supra* at 11-12, which guide this Court's review of the ALJ's credibility decision. Indeed, while Kincaid's narrative-style brief articulately apprises the Court of his "point[] of view" (Doc. #13 at 4), it ignores the overarching standard this Court must follow, that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286. *See also Blakley*, 581 F.3d at 406 ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'"). For the reasons discussed above, applying these legal standards to the record evidence in this case, and to the ALJ's discussion of it, leads to the conclusion that summary judgment is warranted in the Commissioner's favor.

13

### III.     CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Kincaide's Motion for Summary Judgment [13] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: February 6, 2017                                s/David R. Grand
Ann Arbor, Michigan                                    DAVID R. GRAND
                                                       United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 6, 2017.

                                                       s/Eddrey O. Butts
                                                       EDDREY O. BUTTS
                                                       Case Manager